IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sherry McCoy, | ) | C/A No.1:10-3139-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

      This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 33. The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I.     Relevant Background

     A.     Procedural History

      In her 2007 application, Plaintiff alleged her disability began on July 26, 2002, because of fibromyalgia, osteoporosis, osteoarthritis, fatigue, depression, diffuse pain,

memory loss from seizures, possible lupus, sleeplessness, imbalance, and loss of strength. Tr. at 126 33, 152. Her application was denied initially and upon reconsideration. Tr. at 84 87, 94 95. Plaintiff filed a request for a hearing, and Administrative Law Judge ("ALJ") Glen H. Watkins held a hearing on September 25, 2009. Tr. at 29 52 (Hr'g Tr.). The ALJ issued an unfavorable decision on November 13, 2009, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 12 24. Plaintiff's counsel submitted additional evidence to the Appeals Council. The Appeals Council "considered" the additional evidence, "but found that this information d[id] not provide a basis for changing the Administrate Law Judge's decision." Tr. at 1 3. Therefore, the ALJ's decision became final decision for purposes of judicial review. 42 U.S.C. § 405(g). Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on December 10, 2010. [Entry #1].

    B.    The ALJ's Decision

In his November 13, 2009 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.
2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 26, 2002 through her date last insured of December 31, 2007. (20 CFR 404.1571 *et seq.*).
3. Through the date last insured, the claimant had the following severe impairments: osteoarthritis, fibromyalgia, and adjustment disorder with depression and anxiety (20 CFR 404.1520(c)).
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant has the residual functional capacity to lift and carry up to 25-pounds frequently and 50-pounds occasionally, sit, stand or walk for 6 hours in an 8-hour workday limited to occasional climbing of ropes/ladders and scaffolds and frequent climbing of stairs/steps, balancing, stooping, crouching or crawling. She can perform simple, routine, repetitive tasks.

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on April 12, 1947 and was 60 years old, which is defined as an individual of advanced age, on the date last insured (20 CFR 404.1563).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 26, 2002, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(g)).

Tr. at 12  24.II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)   the ALJ improperly discounted the opinion of Plaintiff's treating physician;

2)   the ALJ posed an incomplete hypothetical question to the VE;

3)   the ALJ wrongly discredited Plaintiff's credibility and subjective symptoms; and

3

> 4)  the Appeals Council did not properly consider additional evidence presented to it and remand for further review, nor did it set forth reasons it found no need for such additional review.

The Commissioner counters that substantial evidence supports the ALJ's findings and that neither the ALJ nor the Appeals Council committed legal error in finding Plaintiff was not disabled during the period at issue.

    A.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings; (4) whether such

4

impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82 62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert ("VE") demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to

5

perform other work. *Hall v. Harris*, 658 F.2d 260, 264 65 (4th Cir. 1981)*; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

      2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157 58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157 58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

Plaintiff's final allegation of error may impact the analysis of other issues she raises on appeal, so the court considers it first. On October 13, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision denying benefits. Tr. 1 2. The Appeals Council indicated it "considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council[.]" Tr. at 1. However, the Appeals Council "found that this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. at 2.

Plaintiff argues the ALJ should have considered additional evidence concerning limits her treating physician, Dr. Kevin Tracy, placed on her residual functional capacity ("RFC"). Specifically, Plaintiff argues the evidence would have satiated the ALJ's concern that the record lacked details supporting Dr. Tracy's opinion or treatment records prior to January 2005. Pl.'s Br. at 31.

        1.    Plaintiff's Additional Evidence Presented to the Appeals Council

Although the Appeals Council referenced an enclosed order that listed the additional evidence it considered, that order is not in the record, nor does either party reference it in discussing the additional evidence. For purposes of considering Plaintiff's

allegation of error, the court focuses on the additional evidence the parties discuss.[1] On remand, the Appeals Council should provide the full list of evidence Plaintiff submitted for consideration.

### a.     Additional Records from Dr. Tracy

The record reflects that Plaintiff submitted a September 21, 2009 letter from Dr. Tracy regarding his treatment from November 18, 2005 to June 23, 2009. Tr. at 453. Dr. Tracy said Plaintiff "suffers from chronic pain all over her body[,]" and that fibromyalgia has been part of Plaintiff's pain problem since he began treating her. *Id.* Dr. Tracy indicated that on evaluation, Plaintiff exhibited tenderness on 14 out of 18 potential tender points and that she experienced a "chronic diffuse pain in all of her muscles[,]" and insomnia, which is associated with fibromyalgia. *Id.* Additionally, Dr. Tracy stated that July 2007 x-rays confirmed that Plaintiff suffered from osteoarthritis in her neck, low back, and knees, and that she had moderate osteoarthritis of her cervical spine at C3 C4, C4 C5, and C6 C7. *Id.* Further, Dr. Tracy indicated Plaintiff had experienced moderate osteoarthritis in both knees since he began treating her, and she had moderate osteoarthritis in the lumbar spine at L4 5, 5 S1. *Id.*

---

[1]Defendant indicates Plaintiff submitted the records from Tr. at 53 81 and Tr. at 425 73 to the Appeals Council. Def.'s Br. at 2. Plaintiff cites to records she argues provide evidence new and material to the ALJ's decision, but she does not provide an inclusive list of all additional evidence she submitted. The Commissioner indicated that some of the medical records sent to the Appeals Council either post-dated or did not address the relevant period, and he did not discuss those records. Def.'s Br. at 9 (referencing Tr. at 54 81, 455 63).

Dr. Tracy opined that Plaintiff's neck would become increasingly sore if she were required to look down at a table all day, and that the more she was required to move her neck, the more pain she would experience in that area. *Id.* He indicated Plaintiff's low-back arthritis would require her to change positions once per hour and that her knee arthritis would permit her to walk or stand about 15 minutes at a time. Further, he opined that Plaintiff's multiple areas of arthritis would contribute to insomnia. *Id.* Dr. Tracy stated:

> Overall, the combination of [Plaintiff's] pain from her fibromyalgia, her insomnia, and the pain from her osteoarthritis in her neck, lumbar spine and knees would make it very difficult for her to be able to maintain concentration in a workplace. She does take medications that might affect her ability to concentrate. Lyrica, Ultram and Elavil are meditations that always have the potential for sedation. However, I think her pain and insomnia are enough by themselves to prevent her from being able to concentrate on anything complicated. I do not think that she would be able to perform any type of work involving attention to detail or making judgments in a timely manner.
>
> [Plaintiff] has been limited to sedentary work due to her knee arthritis, and has been unable to concentrate on any kind of work requiring attention to detail or quickly making judgments, since at least the first time that I started treating her in 2005. As of at least July 2007, she also had neck pain that would have further affected her ability to concentrate and low back pain that would have caused her to need to change positions from standing to sitting approximately once per hour. She would miss 3 days of work per month due to either diffuse pain from fibromyalgia or more acute pain in her spine when the weather changes. The longer she stands or walks, the more her back and knees will bother her. I can say that all of the limitations that I indicated on my functional capacity questionnaires that I completed in July 2008 and August 2009 were true as of at least July 2007.

*Id.*

Plaintiff submitted additional records from Dr. Tracy, including a December 8, 2005 treatment note in which he indicated that, despite Plaintiff's positive ANA process, he thought Plaintiff had fibromyalgia and fatigue, rather than classic lupus. Tr. at 470. He prescribed Lyrica and Tylenol Arthritis. *Id.* When Plaintiff returned to Dr. Tracy in January 2006, he noted cardiology tests Dr. Kyra Blatt of Carolina Neurology had ordered indicated no significant cardiac problems. *Id.* Plaintiff reported Lyrica seemed to help some with fibromyalgia and fatigue. *Id.* Examinations in April and August 2006 did not reveal new problems. Tr. at 464 67.

        b.    Record from Wallace Thomson Hospital Radiology Department

Plaintiff's additional evidence included a July 3, 1998 cervical MRI that revealed "[m]oderate degenerative changes most marked at C5 C6 and C6 C7 resulting in mild C5 C6 greater than C6 C7 central canal narrowing. There is bilateral C5 C6 neuroforaminal narrowing." Tr. at 423 24.

        c.    Treatment records from rheumatologist Jeffrey G. Lawson, M.D.

Plaintiff's additional evidence also included treatment records from rheumatologist Jeffrey Lawson, M.D. Dr. Lawson diagnosed Plaintiff with fibromyalgia with a positive ANA, hypercholesterolemia, hypothyroidism, and hypertension. Tr. at 429 31. Plaintiff was taking Tylenol as needed for relief of joint pain, and denied any fatigue or seizures; joint examination revealed a full range of motion with of the trapezius and rhomboid

muscle groups, as well as the right left trochanteric bursa. Tr. at 429 30. Dr. Lawson started Plaintiff on Ambien, encouraged her to get proper sleep, to exercise, and to reduce stress. Tr. at 431. Dr. Lawson indicated Plaintiff's positive ANA was related to a family history of lupus and stated that "with proper rest and exercise program, hopefully she will not develop[] lupus in the future." *Id.* Plaintiff returned to Dr. Lawson for follow up on August 2, 2004, and he indicated she was "doing a little better with her fibromyalgia." Tr. at 428. She reported sleeping better with Ambien and had begun a water exercise program. *Id.* Dr. Lawson adjusted Plaintiff's medications, instructed her to get proper rest and continue to exercise, and told her to return for follow up in two months. *Id.* She returned to Dr. Lawson on October 14, 2004, and indicated her fibromyalgia was "about the same." Tr. at 427. She reported continued discomfort in trapezius muscle groups. Plaintiff indicated she had problems with depression, for which Dr. Lawson prescribed Lexapro. *Id.* He also prescribed physical therapy. *Id.* On January 13, 2005, Plaintiff saw Dr. Lawson and reported doing better with her fibromyalgia. Tr. at 426. She complained of mild cramping in her left foot, which Dr. Lawson indicated could be mild degenerative arthritis. *Id.* Dr. Lawson continued Plaintiff on her medications and indicated she would begin a water walking exercise program. *Id.*

        d.      January 2005 to May 2006 records from Dr. Blatt of Carolina Neurology

In January 2005, Plaintiff saw Dr. Blatt with complaints of involuntary movements of her right arm and leg. Tr. at 450 51. She found Plaintiff had decreased coordination,

11

stiffness, and involuntary movements consistent with dystonia and ordered further tests. Tr. at 450 51. In February 2005, Dr. Blatt suspected epileptic activity and prescribed Keppra. Tr. at 449. Through the remainder of 2005, Plaintiff denied having any more abnormal movements, but had difficulty tolerating some of the prescribed anticonvulsant and pain medications. Tr. at 443 48. In October 2005, Dr. Blatt found Plaintiff had a positive ANA and indicated she should see a hematologist. Tr. at 443. In January 2006, Plaintiff told Dr. Blatt the Lyrica that Dr. Tracy prescribed gave "remarkable results" and that she was "doing much better and overall feels that she has had energy to do things that she enjoys doing." Tr. at 440. As of May 2006, Plaintiff saw Dr. Blatt and indicated she was in a good mood and that her fibromyalgia appeared to be "under control." Tr at. 436. Plaintiff indicated she had not experienced seizures since the prior February, and Lyrica continued to help alleviate her whole body pain. *Id.*

e.     Importance of the Additional Evidence

Plaintiff argues the court should consider the additional evidence in conjunction with all record evidence. Pl.'s Br. at 31 34. She submits that the additional evidence is new and material and related to the period before the date of the ALJ's decision, and that the Appeals Council erred by not discussing its consideration of the additional evidence. *Id*. Plaintiff requests remand for further consideration.

Plaintiff argues that some of the additional evidence is critically important because it provides further evidence that she is limited in a way that would prevent her from

working and directly addresses the ALJ's assessment of the "void of any medical treatment prior to January 2005." Pl.'s Br. at 31, citing to Tr. at 19. The new evidence contains an MRI from 1998 and medical treatment records from Dr. Lawson for the June 2004 January 2005 time-frame. Pl.'s Br. at 31, citing to Tr. at 424, 426 33. Further, Plaintiff presented a letter report from treating physician Dr. Tracy, arguing that report is new and material and that it provides additional detail and discussion concerning his findings regarding Plaintiff's RFC that the ALJ considered, but dismissed as not supported by record evidence. Pl.'s Br. at 31 and Pl.'s Reply at 9, citing to Tr. at 453 (Dr. Tracy's additional letter report); Tr. at 22 (ALJ's discounting Dr. Tracy's "'check-box' physical assessment" of Plaintiff's ability to work); *see also* Tr. at 455 72 (additional progress notes of Dr. Tracy).

    2.    The Appeals Council Should Have Explained Its Consideration of the Additional Evidence

The Commissioner's regulations provide that the Appeals Council will review additional evidence under some circumstances:

(b)    If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

13

20 C.F.R. § 404.970. In order to be "new" evidence, the evidence must not be "duplicative or cumulative," and in order to be "material," there must be a "reasonable possibility that it would have changed the outcome." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc).

Here, the Appeals Council indicated it considered the additional evidence, but declined further review, stating only that it "found this information [did] not provide a basis for changing the Administrative Law Judge's decision." Tr. at 1 2. The Commissioner argues that when, as here, the Appeals Council considers additional evidence but does not undertake further review, that determination is similar to "a determination of whether to grant or deny a petition for certiorari, that is, a preliminary determination (based on the entire record) as to whether formal review is appropriate. In such preliminary determinations, no findings of fact are made and no rationale is given." Def. Br. at 14. Because the Appeals Council denied review in this matter, the Commissioner argues that the court should not review the Appeals Council's determination. Rather, the Commissioner argues the court only need consider the ALJ's decision, which became the final decision after the Appeals Council declined review. *Id.* at 14 15. The Commissioner asserts that there is no need for consideration of whether the newly-presented evidence is "new" and "material." *Id.* at 14.

Plaintiff argues that the Appeals Council should have made findings regarding how it determined to not further review the evidence because, without them, the court will

14

be unable to undertake appropriate judicial review. The undersigned acknowledges there are conflicting opinions within the Fourth Circuit and district courts in the circuit regarding what the Appeals Council must do when reviewing additional evidence.[2] Having reviewed these cases, the undersigned agrees with Plaintiff. "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Plaintiff's additional evidence is new and material. The evidence provides additional information for the time period at issue, and directly responds to several concerns the ALJ expressed in declining to accept Dr. Tracy's opinion regarding Plaintiff's abilities.

In this and all appeals of disability determinations by the Commissioner, the district court's role is to determine whether substantial evidence supports the Commissioner's decision. The court is not to weigh the evidence or substitute its own judgment for that of the Commissioner. *See, e.g., Hays*, 907 F.2d at 1456. In conducting this review, the court needs to understand the Commissioner's rationale for its findings. "'When this court is left in the dark as to how the Appeals Council treated the new evidence a meaningful judicial review is impossible. The court is left with no findings

---

[2] For example, the undersigned is mindful of the nonbinding, unpublished decision in *Hollar v. Commissioner of the Social Security Administration*, No. 98-2748, 1999 WL 753999 *1 (4th Cir. Sept. 23, 1999), which found federal regulations did not require the Appeals Council to provide detailed reasons it did not find additional evidence could alter the decision of ALJ.

from the agency, be they from the ALJ or the Appeals Council, regarding that new evidence.'" *Harmon v. Apfel*, 103 F. Supp 2d 869, 874 (D.S.C. 2000) (*quoting Riley v. Apfel*, 88 F. Supp. 2d, 572, 579 80 (W.D. Va. 2000)); *see also Suber v. Astrue*, 640 F. Supp. 2d 684, 688 (D.S.C. 2009); *Roberts v. Astrue*, 0:09-1607-JFA, 2010 WL 2522995, *5 6 (D.S.C. May 14, 2010); *Chapman v. Astrue*, 07-2868, 2010 WL 419923, *12 (D.S.C. Jan. 29, 2010); *Raymond v. Astrue*, 2:08-974-SB, 2009 WL 632317 * 5 (D.S.C. Mar. 11, 2009) ("When neither an administrative law judge nor the Appeals Council indicate the weight accorded new evidence, a remand is proper."); *Alexander v. Apfel*, 14 F. Supp 2d 839, 843 (W.D. Va. 1998).

As now-Chief Judge David C. Norton noted in *Harmon*, without articulated findings by the Appeals Council, "the court is caught between trying to provide meaningful judicial review of evidence not considered by the fact finder, while avoiding actually performing the task of weighing and resolving conflicts in the evidence, which is, of course, the function of the ALJ." 103 F. Supp 2d at 872. Judge Norton acknowledged that the court's reviewing role is difficult to reconcile with the Fourth Circuit's directive from *Wilkins* that requires the court to consider evidence submitted to the Appeals Council and incorporated into the record. 103 F. Supp. 2d at 874 (*citing Wilkins*, 953 F.2d at 96); *see also Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir. 1978) ("A bald conclusion unsupported by reasoning or evidence, is generally of no use to a reviewing court.").

In *Wilkins*, the Fourth Circuit held that the Appeals Council is "required to consider new and material evidence relating to the period on or before the date of the ALJ decision in deciding whether to grant review." 953 F.2d at 95. If the Appeals Council considered additional evidence and placed it into the record, the court is to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." *Id.* at 96.

The Commissioner focuses on this rule set forth in *Wilkins* and argues that the Appeals Council is not required to explain its rationale for denying review after examining additional evidence. Regardless of whether the Appeals Council provided a basis for its decision to deny review, the Commissioner asserts that the court must still consider the entire record and determine whether the ALJ's decision is supported by substantial evidence. Def.'s Br. at 13.[3]

The undersigned generally agrees with the Commissioner that *Wilkins* stands for the proposition that a reviewing court must look at the record as a whole to determine whether the ALJ's findings are supported by substantial evidence. *Wilkins*, 953 F.2d at 96. In fact, *Harmon* cites that portion of *Wilkins* and notes it is the cause of some conflict

---

[3] The Commissioner responds first by arguing that the court should reject Plaintiff's request that the court should consider the new evidence because Plaintiff's counsel could have obtained those records prior to the hearing before the ALJ. Def.'s Br. at 11 12. That argument is unpersuasive. A claimant seeking to present new evidence to the Appeals Council need not show good cause for failing to present the evidence earlier. *Wilkins,* 953 F.2d at 96 n.3. Further, "a treating physician may properly offer a retrospective opinion on the past extent of an impairment." *Id.* at 96. The undersigned recommends the court reject the Commissioner's request to summarily dismiss Plaintiff's argument.

17

regarding the court's review in these matters. *See Harmon*, 103 F. Supp. 2d at 872 (considering the *Wilkins* directive to consider all record evidence, including additional evidence presented to Appeals Council, as competing with the court's role of reviewing, not weighing, evidence). However, the decision in *Wilkins* does not focus on what the Appeals Council found regarding the new evidence at issue there. Accordingly, the undersigned submits that the *Wilkins* decision did not resolve the issue of whether the court can conduct meaningful review of additional evidence when the record does not indicate how much weight the Appeals Council gave to such evidence. *See Suber,* 640 F. Supp. 2d at 686 (noting *Wilkins* court did not resolve issue of "whether the Court can conduct meaningful review of additional evidence when it is unclear how much weight the Appeals Council gave to that evidence."). *Wilkins* is different factually, as well. In that matter, the Appeals Council had received an additional letter from Plaintiff's treating physician, which the Fourth Circuit characterized as being uncontradicted. 953 F.2d at 96. The Fourth Circuit found that the Appeals Council appropriately considered the new and material evidence, and the court reversed the ALJ's determination that Plaintiff was not disabled for the relevant period. *Id.* However, unlike the evidence before the *Wilkins* court, the new evidence here does not plainly require reversal of the ALJ's decision. Rather, it provides additional evidence that the Commissioner should review in the context of the whole record. The Appeals Council's failure to provide any findings regarding this evidence makes it difficult for the court to review the administrative

findings and to determine whether they are supported by substantial evidence. Because the court should not weigh the evidence itself, remand is appropriate here.

### 3. A Pending Fourth Circuit Appeal Should Not Delay This Decision

In the alternative, the Commissioner argues that, if the court does not agree the Appeals Council need not articulate its findings, the court should withhold its decision in this matter pending the Fourth Circuit's determination in *Meyer v. Astrue*, No. 10 1581. Def.'s Br. at 18. The Commissioner indicates oral argument has been tentatively set for late October 2011, and that the Fourth Circuit has been asked to clarify its position on "this very issue." *Id.* Plaintiff submits it would be inappropriate for the court to withhold its ruling because the decision in the matter on appeal was specific to its facts and there is no guarantee the decision would impact this matter. Pl.'s Br. at 13 (*citing Sligh v. Astrue*, No. 9:10-485-CMC, Entry #24 (May 31, 2011)).

The court agrees with Plaintiff. The district court's decision in *Meyer v. Astrue*, 3:08 3828 JFA JRM, 2010 WL 1257626 (D.S.C. March 25, 2010), was based on the facts and circumstances of that case. The undersigned cannot predict that any decision by the Fourth Circuit will directly impact this matter and recommends the court decline to hold this decision in abeyance. Further, the district court in *Meyer* examined the additional evidence plaintiff presented to the Appeals Council and determined that the proffered evidence was not new and that the Appeals Council could have properly disregarded it. *Meyer*, 2010 WL 1257626 at *5 (noting "[w]here evidence is not new, and

19

perhaps even when it is, the Appeals Council is not required to articulate its reason for failing to consider such evidence"). In contrast, in this case, the court finds that the additional evidence presented to the Appeals Council was both new and material. Therefore, without some explanation from the Appeals Council, the court cannot determine whether the additional evidence rendered the ALJ's decision contrary to "the weight of the evidence currently of record" (20 C.F.R. § 404.970(b)) or whether the final decision of the Commissioner was supported by substantial evidence.

Based on this recommendation, the court will not address Plaintiff's remaining arguments at this time.

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action as set out herein.

IT IS SO RECOMMENDED.

*[signature]*

September 7, 2011                                        Shiva V. Hodges
Florence, South Carolina                                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**